■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRIAN CLARKE, Appellant. [729 NYS2d 88] —Judgment, Supreme Court, Bronx County (Efrain Alvarado, J.), rendered June 19, 1996, convicting defendant, after a jury trial, of murder in the second degree, robbery in the first degree, and criminal possession of a weapon in the second degree, and sentencing him to concurrent terms of 25 years to life, 12½ to 25 years and 7½ to 15 years, respectively, and order, same court and Justice, entered on or about February 22, 2000, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, modified, as a matter of discretion in the interest of justice, to the extent of reducing the sentence for murder in the second degree to a term of 15 years to life and, except as so modified, affirmed.

This case represents a rare lack of consensus on a sentencing issue by this Court. The matter is before us on defendant's appeal from a conviction for felony murder (Penal Law § 125.25 [3]) arising out of the death of one Keith Campbell during the course of a robbery.

Based upon our review of the trial record as a whole as well as defendant's submissions on the motion to vacate judgment, we conclude that defendant received meaningful representation (*see, People v Benevento*, 91 NY2d 708, 713-714; *People v Hobot*, 84 NY2d 1021, 1024) and that the motion was properly denied. Counsel sufficiently developed the issue of defendant's mental capacity to make a voluntary and reliable confession and the record does not establish that counsel failed to prepare the expert witness whom he called on that issue.

The court properly exercised its discretion in excluding from evidence a photograph of the co-defendant's mother, which was found at the scene of the murder (*see, Delaware v Van Arsdall*, 475 US 673, 678-679). Defendant provided no foundation for its admission since he offered no proof that the co-defendant had ever seen it prior to the homicide and stated that he was not even in the apartment when the shooting took place. Absent such a foundation, the photograph could not be used to support defendant's theory that the co-defendant's motive to kill was rage arising from intimacy (suggested in the photograph) between his mother and the victim.

Defendant's suppression motion was properly denied. There is no basis upon which to disturb the court's credibility determinations, which are supported by the record.

Defendant's claims of prosecutorial misconduct in cross-examination and summation are unpreserved, and we decline to review them in the interest of justice. Were we to review these claims, we would find that there was no pattern of prejudicial misconduct warranting reversal (*compare, People v Galloway*, 54 NY2d 396, *with People v Bussey*, 62 AD2d 200).

Defendant was indicted together with an accomplice, Liston Pinnock, who implicated defendant in the crime and identified him to police. It was the semi-nude photograph of Pinnock's mother, found in the victim's apartment, that led police to Pinnock. The indictment charges the men with acting in concert to cause the death of Keith Campbell (count one) and with acting in concert to commit a robbery, in the course of which they caused death (count two). As each defendant accused the other of the actual shooting, Pinnock was tried separately. Anomalously, co-defendant Pinnock was acquitted of all charges against him. Defendant Clarke was acquitted of the intentional murder count and found guilty of felony murder.

The presentencing report states that Brian Clarke is "dangerously aggressive and violent." However, the report also indicates that this assessment is not substantiated by

investigation. It concedes, "As the twenty three year old defendant refused to be interviewed, no information concerning his current social circumstances is known and an assessment of his needs cannot be determined at this time." Thus, the conclusion reached by the Probation Department was based not upon observation of the individual, but upon an appraisal of the crime for which he was convicted. The report concludes, in full, *"As evidenced by his actions herein,* the defendant is a dangerously aggressive and violent individual with a callous indifference to human life" (emphasis added).

It is extraordinary that these propensities could be deduced from a report which otherwise indicates that defendant has no history of violence or weapons use. It candidly states, "The instant offense represents defendant's first arrest and conviction." A supplementary report, for which defendant was interviewed, indicates that at the time of his arrest in November 1992, the then 20-year-old defendant lived with his mother and four siblings. He had been employed "off the books" as a construction worker the previous summer "and admittedly sold marijuana to financially sustain himself." Defendant "said that he was 'evaluated' in terms of psychiatric counseling" in 1989. Defendant continued to protest his innocence to the interviewer.

The sentence, as reduced, is substantial and in compliance with minimum statutory requirements (Penal Law § 70.00 [3] [a] [1]). While the execution-style murder of the victim was certainly callous, it remains that the jury was unconvinced of defendant's direct participation in the killing, convicting him only of the felony-murder count of the indictment. Moreover, this is defendant's first offense and, indeed, his first arrest. Finally, the presentencing report does not refute the trial testimony of a defense witness to the effect that defendant possesses below-average intelligence, an opinion that is entirely consistent with defendant's status as a student in the 11th grade at 20 years of age. Under these circumstances, we regard the sentence imposed to be unduly harsh and modify accordingly. Concur—Mazzarelli, J. P., Ellerin, Wallach and Rubin, JJ.

Friedman, J., dissents in part in a memorandum as follows: Defendant, an admitted drug dealer, was convicted, *inter alia,* of murder in the second degree and sentenced to an indeterminate term of 25 years to life. On this appeal, the majority reduces defendant's sentence to the minimum sentence authorized by law. Because I believe that a drug dealer who participates in the robbery and cold-blooded execution of an-

other human being is not entitled to the minimum sentence, I respectfully dissent from this aspect of the Court's determination.

The evidence, as presented by the People, indicated that defendant participated in the robbery/homicide of Keith Campbell, which occurred inside Campbell's apartment. According to detectives who arrived at the crime scene, Campbell's body was found face down, shot twice in the head. Campbell's hands were tied behind his back with electrical cord and his feet were tied with cable wire. A pillow, which contained two bullet holes, was found covering his head—obviously used to muffle the gunshots.

As the investigation of this murder proceeded, the police initially apprehended defendant's accomplice Liston Pinnock. Supreme Court's decision on defendant's suppression motion reflects that Pinnock gave a five-page written statement. In this statement, Pinnock asserted that he, defendant, and a third man drove to the victim's home to steal marijuana, guns, and money. Pinnock claimed that he departed shortly thereafter, leaving defendant and the third man in the apartment. According to Pinnock, the men met up with each other a short time later and divided the drugs and guns stolen from the victim. Pinnock also stated that defendant later confessed to killing the victim.

After he was apprehended, defendant also made statements to police. In his videotaped statement, defendant admitted going to the victim's apartment with Pinnock, while the third man remained outside in the car. When the victim stepped into another room, defendant took the marijuana, while Pinnock took out a gun. According to defendant, Pinnock then asked him to help tie up the victim. Refusing to do so, defendant claimed to have left the apartment and to have heard gunshots while waiting for the elevator. Approximately one-half hour later, Pinnock, defendant alleged, came down to the car, frantically yelling for them to "drive, drive." They then drove off, went to an abandoned building, and divided the stolen money and marijuana between them.

Since both defendant and Pinnock claimed that the other actually pulled the trigger and killed their victim, Supreme Court severed the action and ordered that separate trials be held. At the severed trial of defendant's case, the prosecutor, of course, could not introduce Pinnock's statement concerning defendant's involvement in the shooting. Accordingly, he focused the jury's attention on the felony murder charge for which there was overwhelming evidence, namely, defendant's

own admission to participation in the robbery. In so doing, the prosecutor pointed out, among other things, that it would have been impossible for one person to have tied up the victim and to have also held him at gunpoint. Thus, it was argued, defendant must have participated in subduing the victim before he was shot.

The jury returned a verdict of guilty on the felony murder charge and Supreme Court, as noted, sentenced defendant to a term of 25 years to life incarceration. In imposing sentence, Supreme Court stated that the victim "Keith Campbell was executed * * * That [it was] an execution, without mercy, without feeling, without regard for life. That deserves the maximum penalty."

In assessing whether a reduction of defendant's sentence is warranted, an appellate court may substitute its discretion for that of the sentencing court (*see*, *People v Suitte*, 90 AD2d 80, 85-86). However, it is well settled that the imposition of sentence is generally within the sound discretion and judgment of the sentencing court and an appellate court will not interfere with such discretion except under the most extraordinary circumstances (*see*, *People v Hicks*, 59 AD2d 251, 253; *People v Caputo*, 13 AD2d 861). In making a determination of whether the sentencing court's discretion should be overridden, due consideration must be given to, among other things, the crime charged and the particular circumstances of the individual before the court (*People v Farrar*, 52 NY2d 302, 305).

Concerning the crime for which defendant was convicted, the evidence demonstrated, at a minimum, that defendant actively participated in a robbery knowing that his accomplice had a gun and that during the robbery he assisted his accomplice in tying the victim up before the victim was murdered. To the extent that there was no evidence that defendant fired the gun, this is hardly a basis for reducing his sentence. The unalterable fact remains that defendant was inextricably involved in this heinous crime.

As to the circumstances of the individual before this Court, while defendant does not have an arrest record, he is an admitted drug dealer. Hence, defendant's background is hardly a factor supporting this Court's substitution of its discretion for that of Supreme Court.

Nor does defendant's alleged "below-average intelligence" provide a basis for reducing defendant's sentence to the minimum. The support for this claim emanated from the testimony of an expert presented by defendant at trial. However, as the defendant concedes in his brief, his videotaped

statement so undermined the expert's testimony that, upon cross-examination, his expert was forced to admit that his confidence in his own conclusions had been shaken.

In view of the foregoing, I fail to perceive how defendant's participation in what can only be termed a cold-blooded execution warrants any reduction in his sentence, let alone the imposition of the minimum sentence authorized by law.

Finally, as stated in *People v Suitte* (90 AD2d 80, 86), "in reducing any sentence, the appellate body must be sensitive to the fact that its actions become guidelines for the trial court to follow in the imposition of future sentences under circumstances similar to the case reviewed." Considering the nature of the crime and the character of defendant, it seems to me that by reducing defendant's sentence in this case, we send the wrong message to the trial courts.